UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
HECTOR JENKINS,                         )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )        Civil Action
                                        )        No. 16-11548-PBS
JEFFREY WINIK, et al.,                  )
                                        )
        Defendants.                     )
_____)

**MEMORANDUM AND ORDER**

March 12, 2018

Saris, C.J.

**INTRODUCTION**

In his Second Amended Complaint ("SAC") (Docket No. 54),
Plaintiff Hector Jenkins, a former mediator in the Boston
Housing Court, brings a Title VII claim against the Housing
Court Department of the Trial Court of the Commonwealth of
Massachusetts ("Trial Court"). Jenkins alleges that he faced a
hostile work environment in the Trial Court and that the Trial
Court discriminated against him on the basis of race and
national origin when it terminated his employment in 2016.

Previously, the Court dismissed with prejudice most of the
claims in Jenkins's First Amended Complaint ("FAC") (Docket No.
24), but granted Jenkins limited leave to amend one Title VII
count. See Docket No. 50. Subsequently, Jenkins filed his SAC.

1

The Trial Court then moved to strike the SAC and to dismiss the remaining Title VII claim. <u>See</u> Docket No. 57. The Magistrate Judge recommended that the Trial Court's motion be allowed. <u>See</u> Docket No. 60.

The Court adopts in part the Magistrate Judge's Report and Recommendation (Docket No. 60), and **<u>ALLOWS IN PART</u>** and **<u>DENIES IN PART</u>** Defendants' motion to strike (Docket No. 57).

**<u>BACKGROUND</u>**

## I.   <u>Factual Background</u>

The following factual background is taken from the allegations in Jenkins's SAC and must be taken as true at this stage. <u>See</u> <u>Foley v. Wells Fargo Bank, N.A.</u>, 772 F.3d 63, 71 (1st Cir. 2014).

Jenkins was a mediator in the Boston Housing Court from 1993 to July 2016, when his employment was terminated. SAC ¶¶ 6, 8. Jenkins is Black and originally from Costa Rica. SAC ¶ 7.

When Judge Jeffrey Winik, who is White, was appointed to the Housing Court in 1995, Jenkins began to have disagreements with him. SAC ¶ 9. Jenkins complained that Black, Hispanic, and Asian tenants were subjected to forced mediation settlements and agreements approved by Judge Winik. SAC ¶ 10. In 2004, Judge Winik became First Justice of the Boston Housing Court and assumed administrative responsibility for the Housing Court Department in Boston. SAC ¶ 12.

The Chief Housing Specialist position in Boston was vacant
when Judge Winik took over court administrative duties. See SAC
¶ 11. Jenkins and Patrick Yoyo, a Black employee who was the
Assistant Chief Housing Specialist at that time, were both
interested in the open position. SAC ¶¶ 13-14. However, during
the selection process, Judge Winik allegedly indicated that he
"did not feel comfortable that [Jenkins or Yoyo] would report
violations by another minority manager," which Jenkins
understood to refer to Magistrate Robert L. Lewis, who is Black.
SAC ¶¶ 15-16. Neither Jenkins nor Yoyo got the Chief Housing
Specialist job. See SAC ¶¶ 17-18.

Instead, Michael T. Neville, who is White, was appointed to
the position of Acting Chief Housing Specialist in late 2004 and
then to permanent Chief Housing Specialist in 2005. SAC ¶¶ 17-
18. Jenkins began to lodge complaints with superiors, arguing
that non-White applicants were not considered for Neville's
position and that the in-house job posting and hiring process
"constituted illegal patronage in violation of the Equal
Opportunity Employment rules of the Trial Court." SAC ¶¶ 18-20.

Jenkins and his new boss Neville did not get along. After
Jenkins's complaints, Neville began yelling in Jenkins's face
and making comments, such as "you are crazy," "we don't want you
here," and "why don't you quit[?]" SAC ¶ 21. Jenkins continued
to complain about mediation results for unrepresented parties

and Neville singling Jenkins out for minor infractions at work. See SAC ¶¶ 22-23. By 2008, Jenkins had filed complaints with the Trial Court's entire administrative hierarchy and had been banned from Judge Winik's courtroom. SAC ¶¶ 24-25.

At multiple points during Barack Obama's presidency, Neville encouraged Jenkins to quit, saying "we don't want you here" and that Jenkins could "complain to [his] boy Obama if [he] want[ed]." SAC ¶ 26. Jenkins perceived these comments to be a racially motivated attack against him, and specifically interpreted Neville's remarks to express that Jenkins "was an unwanted Black foreigner." SAC ¶¶ 27-28. The SAC does not include a date or more specific time period when Neville allegedly made these comments to Jenkins.

In 2015, Jenkins again complained to his superiors about Judge Winik's treatment of unrepresented parties. SAC ¶ 35. Around that time, Judge Winik, Neville, and Paul Burke, the Deputy Housing Court Administrator, began an investigation and disciplinary process against Jenkins, which he alleges was not in compliance with Housing Court rules. See SAC ¶¶ 36, 39. Jenkins was placed on paid leave on April 21, 2015 and was told that he would need to submit to a mental evaluation before returning to work. SAC ¶ 37. Jenkins was evaluated, medically cleared, and allowed to return to work in July 2015. SAC ¶ 40.

Jenkins then filed a complaint with the Attorney General's Office. SAC ¶ 41. The substance of this complaint is not clear from the SAC, but Antoinette Rodney-Celestine, the Human Resources Attorney for the Trial Court Department, began an investigation into Jenkins's allegations about his work environment in August 2015. See SAC ¶ 42. Rodney-Celestine "did find that [Chief Housing Specialist] Neville has yelled at Mr. Jenkins and spoken to him in a manner that was inappropriate for the workplace and Mr. Jenkins has also done the same." SAC, Ex. A at 10. During her investigation, Judge Winik also told Rodney-Celestine that he "thinks Mr. Jenkins is lazy." SAC, Ex. A at 9. Jenkins interpreted this statement by Judge Winik as inappropriate and racially motivated. SAC ¶ 49. Finally, in her report, Rodney-Celestine made recommendations for "new policies and procedures" for "improvement of the office environment." SAC, Ex. A at 12.

But Jenkins alleges that his work environment continued to deteriorate in the spring of 2016. SAC ¶ 51. He logged additional complaints about the same issues he had previously raised. SAC ¶ 51. Rodney-Celestine then ordered Jenkins to stop communicating with all judicial personnel, but later stated that he could raise concerns with the Supreme Judicial Court. SAC ¶¶ 52-53.

In June 2016, Burke, who had been part of the earlier investigation that led to Jenkins's mental evaluation, informed Jenkins of a disciplinary proceeding regarding his alleged failure to comply with the non-communication orders. SAC ¶ 54. Before the scheduled hearing, in June 2016, Jenkins wrote to Burke and outlined his complaints of "racial discrimination in employment" and "the ongoing failure of the Boston Housing Court to address the serious issues of equal access to justice for litigants of all races." SAC ¶ 55. On July 5, 2016, Burke recommended that Jenkins be summarily terminated. SAC ¶ 56. The Chief Judge of the Trial Court, Chief Judge of the Housing Court Department, and Chief Administrator of the Trial Court approved Burke's recommendation and terminated Jenkins's employment on July 22, 2016. SAC ¶ 57.

In December 2016, Jenkins filed a charge with the Equal Employment Opportunity Commission ("EEOC"), "alleging unlawful discrimination in employment practices that resulted in unfavorable decisions affecting his employment and ultimately in his termination." SAC ¶ 58. The charge specifically alleges that Judge Winik discriminated against Jenkins by failing to promote him in 2004 and that Jenkins's termination was in retaliation for his complaints. See Docket No. 38-1. The EEOC issued him a right-to-sue letter on January 25, 2017. SAC ¶ 59.

## II.  **Procedural History**

The procedural history of this early-stage case is already
complicated. The relevant background begins with the FAC. The
FAC included two counts of Title VII violations. See FAC ¶¶ 49-
67. The Title VII claim in Count II of the FAC was based
primarily on the Trial Court's failure to promote Jenkins to
Chief Housing Specialist, but also alleged racially based
comments by Judge Winik and Neville, which suggested a hostile
work environment. See FAC ¶¶ 49-58. Count III expressed a Title
VII claim based on retaliatory termination. See FAC ¶¶ 59-67.

On April 18, 2017, this Court adopted Magistrate Judge
Kelley's Report and Recommendation on the Trial Court's motion
to dismiss the FAC. See Docket No. 50. The Court's order read:

> After a review of the objections, I adopt the
> report and recommendation and dismiss the claims
> with prejudice except the Title VII claim in
> count II which will be dismissed unless
> plaintiff, who is pro se, amends it to meet the
> deficiencies outlined by the Magistrate Judge
> within 30 days.

Docket No. 50. Thus, the Court dismissed with prejudice the
retaliatory termination claim, but allowed Jenkins to amend his
failure to promote and hostile work environment claims.

Jenkins timely filed his SAC in accordance with the Court's
order. See Docket No. 54. In it, he consolidates his Title VII
claims into a single count, alleging that (1) he was subjected
to a hostile work environment based on his race or national

7

origin and (2) his termination was in retaliation for his complaints of "racial discrimination and other mistreatment based on race and/or national origin." SAC ¶¶ 60-66. Jenkins does not appear to have amended his failure to promote claim, although he included factual allegations that would be relevant to such a claim. See SAC ¶¶ 60-66.

The Trial Court moved to strike Jenkins's SAC and to dismiss the remaining Title VII claim. See Docket No. 57. The Trial Court argues that the SAC does not comply with the Court's order allowing a limited amendment and reasserts a retaliatory termination claim that the Court previously dismissed with prejudice. Docket No. 58 at 5-7. Any failure to promote claim raised in the SAC, the Trial Court maintains, would be time-barred, as Neville was hired over Jenkins in 2004. Docket No. 58 at 6-7.

Magistrate Judge Kelley recommended that the Trial Court's motion be allowed. Docket No. 60 at 4. In her Report and Recommendation, she agreed that any failure to promote claim would have accrued outside the 180-day period in which a charge must be filed with the EEOC. Docket No. 60 at 2-3. She also recommended that "any new or additional claims . . . beyond the failure to promote claim" should be stricken, based on this Court's prior order limiting amendments. Docket No. 60 at 2.

**DISCUSSION**

**I.   Failure to Promote & Hostile Work Environment Claims**

This Court adopts Magistrate Judge Kelley's Report and Recommendation to the extent that it recommends dismissal of any failure to promote claim in the SAC. Neville became the Chief Housing Specialist in 2004, and Jenkins alleges that the Trial Court's failure to promote him to that position constituted discrimination. However, Jenkins did not file a charge with the EEOC until December 2016. An individual must file a charge with the EEOC within 180 days -- or, in some cases, 300 days -- of an allegedly discriminatory act "or lose the ability to recover for it." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). Because Jenkins did not do so, he cannot bring a failure to promote claim.

Jenkins's hostile work environment claim must also be dismissed, because there is no indication that it was exhausted at the administrative level. The failure to exhaust administrative remedies with the EEOC "effectively bars the courthouse door." Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). If a claimant receives a right-to-sue letter from the EEOC and pursues the case in federal court, "[t]he scope of the civil complaint is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Thornton v. United Parcel Serv.,

Inc., 587 F.3d 27, 31 (1st Cir. 2009) (quoting Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990)).

The Trial Court sought to dismiss the Title VII claims in Jenkins's FAC because he had not alleged that he had filed an EEOC charge. See Docket No. 34 at 8-9. In response, Jenkins filed a charge with the EEOC in December 2016. See Docket No. 38-1.

The charge focused on Judge Winik's failure to promote him or Yoyo to the Chief Housing Specialist position in 2004 and Jenkins's allegedly retaliatory termination in July 2016. See Docket No. 38-1. In his EEOC charge, Jenkins did not mention allegedly discriminatory comments or actions other than those associated with the 2004 interview process. See Docket No. 38-1. But Neville's allegedly racially motivated statements throughout his time as Jenkins's supervisor make up the bulk of the hostile work environment claim in the federal suit. See SAC ¶¶ 26-28, 62. Without even cursory allegations of those statements or mention of Neville himself in the EEOC charge, the hostile work environment claim could not "reasonably be expected to grow" out of Jenkins's charge. See Lattimore v. Polaroid Corp., 99 F.3d 456, 464-65 (1st Cir. 1996) (holding hostile work environment claim was not within scope of administrative investigation when plaintiff's charge made "no mention of [the alleged harasser] or any incidents of harassment" and was based on "qualitatively and

temporally" different facts and "the conduct of different individuals"). Thus, the hostile work environment claim must be dismissed, as Jenkins's EEOC charge did not rectify the claim's exhaustion problem.

## II.  Retaliatory Termination Claim

The Magistrate Judge's Report and Recommendation is correct that this Court's order of April 18, 2017 dismissed with prejudice the retaliatory termination claim and only allowed amendment of the Title VII claim in Count II of the FAC. But the Court now revises its prior order in light of the allegations in the SAC and allows Jenkins to proceed with his retaliatory termination claim.

Here, Jenkins is a pro se litigant who has, in general, complied with the Court's orders. He has fixed the deficiency in the earlier complaint in the SAC. He now alleges that he was summarily terminated approximately one month after complaining in writing to Burke about "racial discrimination in employment," among other things. SAC ¶¶ 55-57. Racial discrimination in employment is precisely what Title VII was designed to prohibit. Jenkins now has alleged a plausible, exhausted claim of wrongful termination. Based on the principles encouraging judicial leniency for pro se litigants, see Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23-24 (1st

Cir. 2000), the Court finds that it would be in the interests of justice to allow Jenkins to raise this claim.

## ORDER

Defendants' motion to strike Plaintiff's SAC and to dismiss the remaining Title VII claim (Docket No. 57) is **ALLOWED IN PART** and **DENIED IN PART**. Plaintiff's retaliatory termination claim may proceed. Defendants shall file an answer to the SAC by March 30, 2018.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge